**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RUSSELL AARN MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 2220 |
| v. | ) | |
| | ) | Senior U.S District Court Judge |
| MICHAEL J. ASTRUE, | ) | George W. Lindberg |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Russell A. Morgan has filed a complaint seeking review of the decision

by defendant Michael J. Astrue, Commissioner of the Social Security Administration (the

Commissioner), denying plaintiff's application for Social Security Disability benefits

(SSD) and Supplemental Security Income benefits (SSI). Plaintiff and the Commissioner

have filed cross-motions for summary judgment. For the reasons stated below, the

Commissioner's [22] motion is granted and plaintiff's motion [14] is denied.

On May 21, 2004, plaintiff was admitted to a hospital with complaints of

numbness in the left side of his body. He was noted to have a medical history of

hypertension, diabetes, obesity and past subdural hematoma. An MRI showed plaintiff

had suffered an acute right thalamic stroke.

On November 24, 2004, plaintiff began treatment with Dr. Nitin Nadkarni (Dr.

Nadkarni), a neurologist. Dr. Nadkarni confirmed that the May 21, 2004, MRI indicated

plaintiff had suffered a hemispheric lacunar stroke. On June 28, 2006, Dr. Nadkarni

examined plaintiff for complaints related to his thalamic stroke and polemic pain

syndrome. At this time, plaintiff informed Dr. Nadkarni that he was uninsured and could

not afford further treatment, and Dr. Nadkarni referred plaintiff to a pain clinic. Dr.

Nadkarni declined to complete Social Security disability paper work for plaintiff.

On April 28, 2008, Dr. Bruce Bernheim (Dr. Bernheim) examined plaintiff for the

first time. One week later, he completed a functional capacity assessment for plaintiff,

which found plaintiff unable to perform even sedentary work.

In June 2008, Dr. Scott Kale (Dr. Kale) performed a consultative examination of

plaintiff at the request of the Commissioner. Plaintiff's fine motion capability was

reduced for his left hand, but was normal for his right hand. Plaintiff's cervical spine,

shoulder, elbow, wrist and finger motion were normal, but his lumbar spine range of

motion was somewhat reduced. At this time, plaintiff did not suffer from any cognitive

abnormalities. Dr. Kale diagnosed plaintiff as suffering from poorly controlled diabetes,

history of neuropathy in the hands and feet, history of right thalamic stroke with mild

upper and lower extremity weakness, uncontrolled hypertension, and poor vision.

In March 2009, Dr. Prashanthi Boppana (Dr. Boppana) examined plaintiff for the

first time, and completed a Bilateral Manual Dexterity Impairment Questionnaire, which

indicated significant functional limitations. Dr. Boppana diagnosed plaintiff with constant

neuropathic pain and left-sided weakness and numbness. He opined that plaintiff could

never lift any weight with his left hand. Dr. Boppana also indicated that plaintiff was

essentially precluded from using both the left and right upper extremities for grasping,

reaching, and fine manipulations. Dr. Boppana further found that plaintiff had several

other limitations, including various psychological problems, and the need to avoid

wetness, temperature extremes, fumes, gases, dust, heights, pushing or pulling, and

kneeling or bending.

In October 2009, Dr. Boppana reiterated these functional limitations, and opined that plaintiff could sit or stand for no more than one hour in an eight-hour workday.

On April 9, 2008, plaintiff, a high school graduate born in 1956, filed an application for SSD and SSI benefits under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act, 42 U.S.C. § 423 (Act). Plaintiff alleged that he had been disabled since May 1, 2004, and had a combination of physical and mental impairments.

After his application was denied, a hearing was held before an Administrative Law Judge (ALJ). The ALJ concluded that plaintiff was not disabled as defined by the Act because he retained the ability to perform a significant number of jobs in the national economy.  Because the SSA's Appeals Council denied plaintiff's request for review, the ALJ's ruling constitutes the final decision of the Commissioner. *See Blakes v. Barnhart*, 331 F.3d 565, 568 (7th Cir. 2003).

When assessing a disability claim an ALJ conducts the five-step inquiry established by the Social Security Administration. 20 C.F.R. § 404.1520. On review, the ALJ's decision is affirmed if "it is supported by substantial evidence in the record." *Schmidt v. Astrue,* 496 F.3d 833, 841 (7th Cir. 2007)(citations omitted). The Seventh Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008)(*citing Richardson v. Perales,* 402 U.S. 389, 401 (1971). Although a court gives the ALJ's credibility determinations "special deference," the ALJ must "build an accurate and logical bridge between the evidence and the result." *Ribaudo v. Barnhart,* 458 F.3d 580, 584 (7th Cir. 2006). A court may not decide the facts anew, re-weigh the evidence or substitute its own judgment for that of the ALJ to decide whether the

claimant is or is not disabled. *Powers v. Apfel*, 207 F.3d 431, 434-435 (7th Cir. 2000). In addition, both "the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be examined, since the review of the substantiality of the evidence takes into account whatever in the record fairly detracts from its weight." *Bauzo v. Bowen,* 803 F.2d 917, 923 (7th Cir. 1986).

The five-step test established by the Social Security regulations inquires whether:

1. The claimant is presently employed;

2. The claimant has a severe impairment or combination of impairments;

3. The claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity;

4. The claimant's residual functional capacity leaves him unable to perform his past relevant work; and

5. The claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)(*citing* 20 C.F.R §§ 404.1520 & 416.920). In order to find that a claimant is disabled there must be an affirmative answer at either step three or step five. *Id.* The claimant bears the burden of establishing steps one through four. *Id.* If he does so successfully, the burden shifts to the Commissioner to establish step five. *Id.*

Steps 1 through 4 of the five-step analysis are not at issue in this case. At step 5, plaintiff challenges the ALJ's: (1) adverse determination of plaintiff's credibility; (2) failure to follow the "treating physician rule"; (3) use of physician's treatment notes to assess credibility; and (4) reliance on a "negative inference" in regard to plaintiff's decision to change physicians. These arguments attack the ALJ's Residual Functional

Capacity (RFC) determination and the ALJ's determination that plaintiff could find work in the national economy.

The ALJ found that plaintiff was not credible when testifying about the amount of pain from which he suffers. The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause some of plaintiff's alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with plaintiff's RFC. The ALJ also noted that plaintiff "endorsed" some symptoms that were "wholly unsupported by the evidence of record."

An ALJ's power to discount credibility is not unlimited: she must consider a number of factors imposed by regulation, *see* 20 C.F.R. § 404.1529(c), and must support her credibility findings with evidence in the record. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Nonetheless, an ALJ's credibility determination receives "considerable deference." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)(*citing Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004). In evaluating an ALJ's credibility determination, the court examines whether the determination was reasoned and supported. *See Sims v. Barnhart,* 442 F.3d 536 (7th Cir. 2006). Accordingly, an ALJ's credibility finding will only be disturbed if it is "patently wrong in view of the cold record." *Pope v. Shalala*, 998 F.2d 473, 487 (7th Cir. 1993).

First, plaintiff argues that the ALJ was "patently wrong" in finding plaintiff's pain testimony not credible. However, the ALJ provided several well-supported reasons for her adverse credibility determination. For example, the ALJ noted that despite plaintiff's claim that he suffered from significant cognitive and memory deficits, plaintiff's medical

records specifically describe plaintiff as alert and cooperative, and mental status changes had not been documented on examination of plaintiff. The ALJ found this particularly troubling because cognitive deficits would almost certainly be specifically addressed if present in a stroke victim.

Further, the ALJ found significant inconsistencies in plaintiff's testimony. For example, the ALJ noted a discrepancy between plaintiff's claim that he is wholly incapable of performing household chores of any kind and the fact that physicians' treatment notes indicate his impairments do not significantly impact his ability to live independently. The ALJ specifically noted that this testimony conflicted with the recommendation of multiple doctors that plaintiff exercise for 45 minutes per day. Plaintiff also testified that he is significantly limited in his ability to sit for prolonged periods of time despite the absence of a medically determinable impairment that would cause difficulty with prolonged sitting.

Second, plaintiff argues that the ALJ did not properly analyze and consider the medical opinions of Drs. Boppana and Bernheim. In support, plaintiff cites considerable case law from other circuits for the proposition that the "treating physician rule" dictates that the opinions of Drs. Boppana and Bernheim receive controlling weight. While a treating source's opinion generally receives more weight, 20 C.F.R § 404.1527(d)(2), the Seventh Circuit has held that if the treating physician's opinion is not well-supported by objective medical evidence or is contradicted by other substantial evidence, it loses any presumptive weight to which it might have been entitled and becomes "just one more piece of evidence for the administrative law judge to weigh." *Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2009); 20 C.F.R. § 404.1527(d)(2).  The ALJ decided not to give

significant weight to the assessments of Drs. Bernheim and Boppana because they were inconsistent with other substantial evidence in the record.

As an initial matter, Dr. Bernheim is not a treating physician in this case because he had seen plaintiff only once before offering his opinion. The regulations define a treating physician as a doctor "who has, or has had, an ongoing treatment relationship with [plaintiff]." 20 C.F.R. § 404.1502. A doctor who only examines a plaintiff once does not have an ongoing relationship with plaintiff, and accordingly, fits the definition of a non-treating source. *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005). Thus, the ALJ was entitled to give diminished weight to Dr. Bernheim's opinion to the extent she found it internally inconsistent and inconsistent with other substantial evidence in the record.

Dr. Boppana also offered his opinion after seeing plaintiff once, although he did reiterate his opinion after continuing to treat plaintiff. Nonetheless, it is not necessary to determine whether Dr. Boppana was a treating or non-treating source because the ALJ determined his opinion was inconsistent with substantial evidence in the record and unsupported by objective evidence.

The ALJ determined that the opinion of Dr. Boppana was "not very credible," and that it should not be given controlling weight. Dr. Boppana diagnosed plaintiff with significant functional limitations, many of which were based on symptoms greater than those indicated in plaintiff's medical records at the time of his stroke. The ALJ found this suspect because "neither the objective findings nor the claimant's complaints (as reported to his treating physicians) generally reflect a significant worsening in his condition(s) in the years following the [plaintiff's] stroke." Dr. Boppana also indicated that plaintiff had suffered from many limitations since 2004 despite the fact that Dr. Boppana did not treat

plaintiff until 2008. Dr. Boppana further asserted that plaintiff could walk for less than one hour in an 8-hour workday, while the record shows that plaintiff's doctors regularly recommended that plaintiff exercise for 30 to 45 minutes in a day.

Dr. Boppana opined that plaintiff suffered from significant restrictions that are unsupported by objective medical evidence. Most importantly, the ALJ noted that Dr. Boppana stated plaintiff was precluded from using both his right and left upper extremities, while plaintiff's medical records are devoid of objective findings or subjective complaints that warrant a functional limitation of the upper right extremity. Moreover, he found plaintiff suffered significant environmental restrictions, such as the need to avoid wetness, dust, fumes, etc., despite the absence of evidence of a significant respiratory impairment, or any other objective medical impairment causing such restrictions.

Because the opinions of both Drs. Bernheim and Boppana were internally inconsistent and inconsistent with other substantial evidence in the record, the court finds the ALJ's decision to give these opinions little weight was reasonable, as well as adequately articulated.

Third, plaintiff argues that the ALJ improperly relied on physician's treatment notes. However, the Seventh Circuit has regularly affirmed an ALJ's reliance on treatment notes to support adverse credibility determinations of physicians when those notes are internally inconsistent or contradict the physician's opinions. *See*, *e.g.*, *Schmidt v. Astrue,* 496 F.3d 833, 842-843 (7th Cir. 2007); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004).

In *Schmidt*, the Seventh Circuit affirmed an ALJ's decision to give little weight to a treating physician's opinion where the physician's treatment notes revealed a lack of subjective pain that contradicted his opinion that the claimant was unable to perform even sedentary levels of work. *Id.* Similarly in this case, it was not improper for the ALJ to rely on treatment notes that showed the opinions of Drs. Bernheim and Boppana were internally inconsistent and contradicted their assertion that plaintiff is unable to perform even sedentary work.

Finally, plaintiff argues that the ALJ improperly made a "negative inference" from the fact that plaintiff changed neurologists after his first neurologist, Dr. Nadkarni, would not give an opinion on disability. Plaintiff argues that he stopped seeing Dr. Nadkarni because he could not afford further treatment. However, upon examination by the ALJ plaintiff admitted that he stopped seeing Dr. Nadkarni, in part, because he refused to fill out disability paperwork for plaintiff. From this testimony the ALJ inferred that Dr. Nadkarni did not believe that plaintiff was disabled. The Seventh Circuit has held that an ALJ can support its decision to deny disability benefits based on "negative inferences" evident from a review of the record. *See Scott v. Sullivan,* 898 F.2d 519, 523 (7th Cir. 1990). It was within the ALJ's role as fact-finder to weigh the evidence, and it was not improper for her to draw "negative inferences" from plaintiff's testimony.

The vocational expert testified that plaintiff would be able to work as a cashier, housekeeper, and food preparation worker. Because plaintiff could find work that exists in the national economy, the ALJ found plaintiff "not disabled." The court finds that this determination is supported by substantial evidence.

**ORDERED:** Plaintiff Russell A. Morgan's Motion for Summary Judgment [14] is denied. Defendant Michael J. Astrue's Motion for Summary Judgment [22] is granted. Judgment in favor of defendant and against plaintiff will be set forth on a separate document and entered in the civil docket. Fed. R. Civ. P. 58(a), 79(a).

ENTER:

GEORGE W. LINDBERG
Senior U.S. District Judge

DATED: April 2, 2012